# Commonwealth *versus* Robbins.

Where one was indicted for keeping a gambling-house, and his recognisance was forfeited, a person who lost money at play, in such house, was not entitled to claim any part of such recognisance :

1st. Because the risking his money was a voluntary act, and *volenti non fit injuria*.

2d. Because the Act of 1794 provides the only method by which money lost at play may be recovered back, and the remedy provided must be strictly pursued.

3d. Because such a claim is not within the provisions of the Act of 22d April, 1846, not being the direct result of the crime, nor is the amount of the injury fixed and ascertained by the same evidence which proves the offence against the public.

4th. When a statute creates a right, and limits the time for bringing an action upon it, and the limitation is suffered to expire without any action, the right itself is gone, and cannot be revived by being claimed in another proceeding.

CERTIORARI to the Common Pleas of *Philadelphia*.

[Commonwealth *v.* Robbins.]

At June sessions, 1853, a bill of indictment was found against William Robbins, for keeping a gambling-house; he was arrested and entered into recognisance for his appearance, but made default. The recognisance was sued out, and six hundred dollars collected from the bail and brought into court for distribution. The court appointed an auditor to distribute the fund. After paying the costs and expenses of collection, the balance was directed to be paid into the county treasury. This balance was claimed by the prosecutor in the criminal case against Robbins, because he had made the information against Robbins, upon which he was arrested—was one of the witnesses upon which the bill was found, and had lost more than the amount at a faro table in Robbins's house. The court below decided against this claim, and such ruling was assigned for error here.

*W. B. Reed,* for defendant in error.

The opinion of the court was delivered by

BLACK, J.—Robbins, the defendant, was arrested and bound over for keeping a gambling-house. The grand jury found an indictment against him; but when the time of trial came he did not appear, and his recognisance, together with that of his surety, was forfeited. It was sued, and six hundred dollars recovered from the bail. The court appointed an auditor to distribute it. After paying costs and expenses of collection, the balance was directed to be paid into the county treasury. This order is complained of by an individual, who insists that he ought to have what was given to the county, because he made the oath on which Robbins was arrested, was one of the witnesses against him, and had lost more than the whole amount of the recognisance at a faro table in Robbins's house.

This claim is grounded on the Act of 22d April, 1846, which provides, that when money is collected on a recognisance given for the appearance of a person charged with a criminal offence, it shall be applied, first to pay costs and expenses, and next " to satisfy the damages sustained by any person by reason of the commission of such crime or misdemeanour." The prosecutor thinks that he lost his money because of the unlawful house which Robbins maintained, and that, therefore, he has suffered damages *by reason of* Robbins's offence. But we think he greatly mistakes the meaning of the words used in the statute. His misfortune was not the natural or necessary consequence of Robbins's misconduct. The open house and general invitation to enter may have been the remote cause—the *causa causarum*, or original inducement—which led him into trouble. When he went in, he yielded to a weakness which it was his duty to resist. The sight of the faro table roused his cupidity or excited his passion for

[Commonwealth *v*. Robbins.]

play, and he was tempted to bet. He risked his money and lost it. The direct and immediate cause of the loss was his own inexcusable folly. Besides, it is very probable, that if his money had not gone where it did, he would have parted with it quite as readily at some other place. When there is a will to do such things, there are generally more ways than one. At all events, we cannot say that he suffered anything which can legally be called damage, at the hands of Robbins; first, because the law will not look beyond the proximate cause of an injury; and secondly, because the proximate cause, in the present case, was the voluntary act of the suffering party. At least it was done with his own consent; and *volenti non fit injuria.*

This maxim is not the less applicable, because the Act of 1794 authorizes an unlucky gambler to recover back the money he loses, if suit be brought within ten days. The action under that statute is not for damages, but for a penalty. It is expressly provided that the suit shall be founded on the act, and the recovery shall be according to the form of the act; and, therefore, it does not proceed on the principle of compensating an injured party in damages. It ought to be recollected also that the money thus lost is to be recovered back from the person who wins it, and not from the owner of the house where it was played for. These considerations would answer the argument derived from the Act of 1794 sufficiently; but these are not all. When a statute creates a right, and limits the time for bringing an action upon it, and the limitation is suffered to expire without any action, the right itself is totally gone. It cannot be revived by being claimed afterwards in another and a different proceeding.

If the construction of the Act of 1846 now contended for were the true one, the Courts of Common Pleas would be under the continual necessity of tracing back the vices of men to their first beginnings, and calculating the propulsion of one moral cause upon another, until the original temptation is ascertained. No human tribunal is fit for such a task. But even if that could be done, the difficulty of adjusting the compensation would be greater still. How, for instance, would a court manage, in the case of a tippling-house, to fix a price upon the health, character, time, and reputation which the frequenters of it have lost? What auditor would be skilful enough to make equal distribution, upon this principle, of three or four hundred dollars among a score or two of sots?

Nor can we assent to a rule, which would give a claim on the recognisance in every case to those who are directly injured, or who might maintain an action against the offender. In homicide or arson there is no compensation, because the private wrong is merged in the public offence. For a libel or a battery, the person specially injured may have compensation at the same time that

[*Commonwealth v.* Robbins.]

the Commonwealth punishes him for the sake of example. But the damages must be recovered by due course of law. The criminal and civil proceedings are totally distinct, and often depend on principles as different as if the act, out of which they grew, were not the same. To let a person who has suffered in this way neglect bringing his action and take his satisfaction out of a recognisance, would be to confound the indictment and the civil suit, and to make one a mere incident of the other. It would be assessing damages without a jury, and in the absence of the only party who could know the defence. It would create an antagonism, where none ought to exist, between the county and the person wronged, and make it the interest of the public to reduce the damages by denying or extenuating the guilt of a criminal. The governor may remit a recognisance. Does this law put the private rights of a citizen in the power of the executive? Again, suppose the party to have got all he can get out of the recognisance, will that bar a subsequent action? If not, shall he recover without reference to what he has already received, or may the jury set it off in their verdict? It is impossible to believe that the legislature ever intended to create such a tissue of anomalies.

The Act of 1846 provides for the payment of the damages, *with interest* from the time when the offence was committed. This, and the reasons already mentioned, show very satisfactorily that the word *damages* is not used in its technical sense, but is intended to signify the just and legal claim of one who has been directly injured by the commission of the crime, and, at the same time, a claim definitely ascertained and fixed by the very evidence which proves the offence against the public. We can say this only of cases in which restitution or payment to the injured party is included in the criminal sentence; as, for instance, in larceny or bastardy.

This construction reconciles all difficulties, while it satisfies the words of the statute. It leaves the court nothing to do beyond what would have to be done in giving judgment on the indictment, and we believe it to be entirely consistent with the general practice of all the courts in the state.

It is proper to add, that no motion was made by the district attorney to quash the writ of *certiorari*.

Judgment of the Court of Common Pleas affirmed.